IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WAYNE W. JONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 3:10CV371 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Wayne W. Jones, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 16) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for SSI on March 14, 2008 and DIB on April 3, 2008, claiming disability due to chronic liver disease and obesity, with an alleged onset date of May 4, 2007. (R. at 37-48.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 10, 22-23, 28-31.) On September 2, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 547-71.) On October 21, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where Plaintiff retained the residual functional capacity to perform his past relevant work as a cashier, as it is generally performed in the national economy. (R. at 16.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 3-6.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. c 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. c 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 12.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of chronic liver disease and obesity, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that he could only occasionally climb, balance, stoop, kneel, crouch and/or crawl. (R. at 13-15.)

The ALJ then determined at step four of the analysis that Plaintiff could perform his past relevant work as a cashier, because such work did not require activities precluded by Plaintiff's RFC. (R. at 16.) Because the ALJ determined that Plaintiff was capable of performing his past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 16.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ committed error in failing to include Plaintiff's diarrhea and excessive bowel movements in Plaintiff's RFC; (2) the ALJ committed legal error by failing to make specific findings of fact regarding Plaintiff's past

relevant work as a convenience store clerk; and (3) "[a]ssuming [a]rguendo that the ALJ's RFC is correct, the ALJ erred because if he compared the actual requirements of a cashier/stocker position with the RFC, the only rational conclusion is that [Plaintiff] is not capable of performing his past relevant work." (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 16-20.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 14-19.)

> **1. Plaintiff contends that it was "irrational and error" for the ALJ to fail to include Plaintiff's diarrhea and excessive bowel movements in Plaintiff's residual functional capacity.**

Plaintiff correctly points out that, in determining a person's RFC, the ALJ must consider all of the impairments suffered by the claimant, including physical impairments, mental impairments, and impairments caused by pain. (Pl.'s Mem at 16); 20 C.F.R. § 404.1545. In a function report completed by Plaintiff on November 24, 2008, Plaintiff wrote the following: "I use [the] restroom 7-12 times aday [*sic*] because I suffer from cronic diarrea [*sic*]. At times I barely make it to the restroom." (R. at 75.) As evidence of his chronic diarrhea, Plaintiff points to medical records documenting numerous complaints of diarrhea by Plaintiff between November 9, 2006 and May 16, 2008. (Pl.'s Mem at 17-18.) According to Plaintiff, it was "clearly irrational" for the ALJ to fail to consider "Plaintiff's necessity to have 7-9 or 10-12 loose bowel movements a day when the medical records clearly corroborate Plaintiff's complaints of diarrhea." (Pl.'s Memo at 18.)

Plaintiff has certainly established a clear medical record of his having made complaints about chronic diarrhea to treating physicians. However, Plaintiff's contention that the ALJ failed to consider Plaintiff's claims about chronic diarrhea in determining his RFC is without merit. In

evaluating Plaintiff's claim about chronic diarrhea, the ALJ relied on the medical opinion of Dr. Bolling Feild, who conducted a consultative examination for the Social Security Administration on July 25, 2008. (R. at 15; 481-87.) The ALJ wrote in his decision regarding the Plaintiff's diarrhea that "[t]he claimant complained about chronic diarrhea, but Dr. Feild opined that it was not a particular problem for [Plaintiff]." (R. at 15).

At the examination conducted by Dr. Feild, Plaintiff alleged disability due to "liver disease, enlarged spleen, very low blood platelets, low potassium, chronic diarrhea, high blood pressure, large mass of bleeding hemorrhoids, cataracts on both eyes, dizzy spells, pain in lower abdomen and side, cannot lift heavy objects. fluid retention, history of hernia repair, and gastroesophageal." (R. at 481). With respect to chronic diarrhea, Dr. Feild noted the following: "[Plaintiff] also says that he has had some diarrhea intermittently and apparently had it in 2006. It is not clear to me why he has intermittent diarrhea." (R. at 482). Dr. Feild ended his list of diagnoses of Plaintiff by stating that he did not think that chronic diarrhea was particularly a problem for Plaintiff, and did not find or offer the opinion that Plaintiff had any functional restrictions due to diarrhea. (R. at 485.)

Had the ALJ simply ignored Plaintiff's claims about chronic diarrhea, there would perhaps be grounds for a remand for further consideration of that issue. However, the ALJ did consider Plaintiff's claims about chronic diarrhea and rejected them as not credible, noting that many of Plaintiff's subjective complaints were not supported by objective medical evidence. (R. at 15). The ALJ gave great weight to the opinion of Dr. Feild, whose findings the ALJ found to be consistent with the longitudinal medical records and based on a thorough examination. (R. at 15). Also, pursuant to SSR 96-6p, the ALJ relied on reports by two non-examining state agency medical consultants, Dr. James Darden and Dr. David Williams, who independently reviewed the

8

record in August 2008 and December 2008, respectively, and neither assigned any limitations to Plaintiff related to diarrhea or excessive bowel movements. (R. at 15; 489-95, 530.) State agency medical consultants are highly qualified physicians, as well as experts in Social Security disability evaluations. 20 C.F.R. § 404.1527(f)(2)(i). The Commissioner has mandated that the opinions of such state agency medical consultants be treated as expert opinion evidence, SSR 96-6p, and it was therefore proper for the ALJ to assign significant weight to the opinions of Drs. Darden and Williams.

Also supporting the ALJ's discounting of Plaintiff's claims of urgent and uncontrollable diarrhea are Plaintiff's somewhat sporadic history of reporting such diarrhea and the relative lack of medical treatment for it. For instance, although Plaintiff, during the time period relevant to this case (May 4, 2007 through October 21, 2009), regularly reported diarrhea in the sense of loose or watery stools and frequent daily bowel movements,[6] (R. at 242, 422, 465-69), he did not regularly report symptoms of incontinence[7] or rectal urgency.[8] Moreover, on questionnaires completed in April 2008, November 2008, and February 2009, on which he was asked to list his current medications, Plaintiff did not list any anti-diarrhea medications. (R. at 69, 87, 102.) During a November 15, 2008 evaluation performed for purposes of approving him for surgery, Plaintiff did not mention any problems with diarrhea or bowel movements to Dr. Horton or Dr.

---

[6] Diarrhea describes loose, watery stools that occur more frequently than usual. Diarrhea is something everyone experiences. Diarrhea often means more frequent trips to the toilet and a greater volume of stool. Mayo Clinic, http://www.mayoclinic.com/health/diarrhea/DS00292 (last visited, May 31, 2011).

[7] Incontinence is the inability to control excretory functions, such as defecation and urination. Dorland's Illustrated Medical Dictionary 942 (31st. ed. 2007).

[8] Urinary or fecal urgency is a sudden, uncontrollable impulse to evacuate, followed by incontinence. Dorland's Illustrated Medical Dictionary 942 (31st. ed. 2007).

9

Essa, (R. at 15, 137-39); nor did Plaintiff mention any problems with diarrhea in a May 9, 2009 follow-up examination with Drs. Horton and Essa.

At the hearing before the ALJ, Plaintiff testified about his diarrhea under questioning by his attorney. (R. at 565-67.) It is clear from the ALJ's decision that he considered Plaintiff's claims, but ultimately found them not credible. (R. at 15.). This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

The ALJ was aware of Plaintiff's claims of chronic diarrhea. However, the ALJ found such claims unconvincing and inconsistent with the objective medical evidence. The ALJ made his credibility determination in the context of Plaintiff's history of subjective reports of massive,

bleeding hemorrhoids juxtaposed with objective medical diagnoses of mild hemorrhoids. (R. at 14, 143-45, 481-484.) Especially in light of the significant deference owed to the ALJ in findings regarding a plaintiff's credibility, this Court must recommend that the ALJ had substantial evidence supporting his refusal to include a diarrhea-related functional limitation in Plaintiff's RFC. Simply stated, the ALJ was neither irrational nor in error in failing to include Plaintiff's diarrhea and "excessive bowel movements" in the determination of Plaintiff's RFC.

> 2. **Plaintiff contends that the ALJ committed legal error by failing to make specific findings of fact regarding Plaintiff's past relevant work as a convenience store clerk.**

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of his previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is still on Plaintiff at step four to prove that he is unable to perform his past relevant work. Plaintiff must "show an inability to return to his previous work (*i.e.,* occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).). Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles (DOT) as presumptively descriptive of a claimant's prior work. Id.

Plaintiff notes SSR 82-62, which provides that in concluding that the claimant has the capacity to perform a past relevant job, the ALJ's determination or decision must include the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his past job or occupation. (Pl.'s Memo at 19); SSR 82-62. Plaintiff also appeals to case law suggesting that "the ALJ must determine precisely

which pertinent activities are required for the claimant's past relevant work and the activities that the claimant is capable of performing." (Pl.'s Memo at 19); see Parsons v. Apfel, 101 F. Supp. 2d 357, 362 (D. Md. 2000). According to Plaintiff, "[t]he ALJ never identified specifically what physical and mental jobs were required of a cashier/stocker position in a convenient store. As such, the ALJ committed error." (Pl.'s Memo at 19-20.)

Plaintiff's claims lack merit. First, the ALJ made a specific finding of fact regarding Plaintiff's RFC, finding that he "has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb, balance, stoop, kneel, crouch and/or crawl." (R. at 13-15.) Second, the ALJ made a finding of fact as to the physical and mental demands of the claimant's past occupation, relying on the Dictionary of Occupational Titles ("DOT") entry for Cashier II, including its classification of cashier work as entailing "light exertion." (R. at 16); DOT 211.462-010. Third, contrary to Plaintiff's assertion, the ALJ made an explicit finding of fact that Plaintiff's RFC would permit a return to his past job or occupation: "The claimant's past relevant work as a cashier, as it is generally performed in the national economy (DOT # 211.462-010), entailed light exertion. Because the claimant's past relevant work did not require the performance of work activities precluded by his medically determinable impairments, he is able to return to the type of work he performed in the past." (R. at 16.)

Thus, Plaintiff's contention that the ALJ committed legal error by failing to make specific findings of fact regarding Plaintiff's past relevant work as a convenience store clerk is unpersuasive, due to the fact that the ALJ did make the required specific findings of fact, including (1) a finding of fact as to Plaintiff's RFC; (2) a finding of fact as to the physical and

mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to Plaintiff's past job or occupation.

> 3. **Plaintiff contends that even if it is assumed, arguendo, that the ALJ's RFC is correct, "the ALJ erred because if he compared the actual requirements of a cashier/stocker position with the RFC, the only rational conclusion is that [Plaintiff] is not capable of performing his past relevant work."**

In his support of his argument, Plaintiff quotes at length the DOT entry for Cashier II,[9] (Pl.'s Memo at 20), which the ALJ explicitly relied on in concluding that Plaintiff is not disabled. (R. at 16). Plaintiff also quotes the DOT entry for Cashier-Checker,[10] along with the

---

[9] **211.462-010 CASHIER II (clerical) alternate titles: cash clerk; cashier, general; cashier, office; ticket clerk**
Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks and issues receipts or tickets to customers. Records amounts received and prepare reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).

[10] **211.462-014 CASHIER-CHECKER (retail trade)**
Operates cash register to itemize and total customer's purchases in grocery, department, or other retail store: Reviews price sheets to note price changes and sale items. Records prices and departments, subtotals taxable items, and totals purchases on cash register. Collects cash, check, or charge payment from customer and makes change for cash transactions. Stocks shelves and marks prices on items. Counts money in cash drawer at beginning and end of work shift. May record daily transaction amounts from cash register to balance cash drawer. May weigh items, bag merchandise, issue trading stamps, and redeem food stamps and promotional coupons. May

13

DOT definition of "Light Work."[11] (Pl.'s Memo at 20-21.) Plaintiff then asserts that the ALJ did not simply restrict Plaintiff to "light duty work," but imposed additional restrictions: "In this case, the ALJ opined that Plaintiff had the residual capacity to perform light work except that <u>he can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl.</u>" (Pl.'s Memo at 21-22, emphasis in original.) Plaintiff argues that, because the DOT descriptions do not explicitly state that those jobs can be performed by someone who can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl, it was irrational for the ALJ to find that a person with Plaintiff's RFC could perform his past relevant work as a cashier. (Pl.'s Memo at 22.)

Plaintiff contends that a comparison of his RFC, as established by the ALJ, with the DOT descriptions relied on by the ALJ reveals that no person with such an RFC could perform Plaintiff's past relevant work as a cashier. In support of this claim, Plaintiff points to the lack of an explicit statement in the relevant DOT descriptions that someone who "can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl" can nevertheless perform those jobs. It is true that the parts of the DOT descriptions quoted by Plaintiff's memorandum lack any explicit reference to stooping, kneeling, climbing, etc. However, it is not clear that the lack of such language entails an incompatibility between Plaintiff's RFC and the DOT descriptions. The

---

cash checks. May use electronic scanner to record price. May be designated according to items checked as Grocery Checker (retail trade).

[11] **L-Light Work** - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

relevant question instead is whether there is anything in the DOT descriptions cited by Plaintiff that require work incompatible with Plaintiff's RFC. This Court can find no such requirements in the DOT descriptions cited by Plaintiff.

More damaging to Plaintiff's argument regarding the content of the relevant DOT descriptions is his failure to note that there is a portion of DOT 211.462-010, which the ALJ relied on in reaching his decision (R. at 16), that states explicitly that climbing, balancing, stooping, kneeling, crouching, and crawling are "not present" in the job of Cashier II. DOT 211.462-010. Moreover, the job of "Cashier-Checker," to which the ALJ made no reference in his decision, but which Plaintiff quotes in his memorandum, explicitly states that such occupation involves <u>occasional</u> stooping, kneeling, and crouching, and does not require <u>any</u> climbing, balancing, or crawling. DOT 211.462-014. Thus, contrary to Plaintiff's contention, a close examination of the DOT description relied upon by the ALJ and the alternative DOT description suggested by Plaintiff reveals that Plaintiff's RFC, including the additional restriction that Plaintiff can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl, is indeed compatible with his past relevant work. Having considered the various DOT descriptions as presented in Plaintiff's memorandum along with the parts of the DOT descriptions overlooked by Plaintiff, this Court finds no legal error or irrationality in the ALJ's finding that the Plaintiff's RFC is compatible with his past relevant work as a cashier.

In arguing that no reasonable person could read the relevant DOT descriptions and find that a person with Plaintiff's RFC could perform those jobs, Plaintiff suggests that the ALJ should have "at the very least" had a vocational expert testify at the hearing regarding the compatibility of Plaintiff's RFC with the job of cashier. (Pl.'s Memo at 22.) However, Social Security Regulations make it clear that, in determining whether Plaintiff's RFC is compatible

with Plaintiff's past relevant work as it is generally performed in the national economy, the ALJ may rely on the descriptions of the claimant's past jobs contained in the DOT. SSR 82-61. Therefore, it was not a legal error for the ALJ in this case not to consult a vocational expert at the hearing.

Accordingly, the Court recommends a finding that there was substantial evidence supporting the ALJ's decision that Plaintiff's RFC is compatible with Plaintiff's past relevant work as a cashier.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 16) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: May 31, 2011
Richmond, Virginia